[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION
The 46 year old plaintiff husband has brought this action against the 45 year old defendant wife seeking a dissolution of marriage on the ground of irretrievable breakdown. The parties were married in Connecticut on May 18, 1968. The final separation occurred in December, 1991 when the plaintiff moved from the family home. The allegations of the amended complaint are found to be proven.
The marriage has been a difficult one for both parties for reasons the court will detail infra.
The parties have one minor child, Shana Bolduc, born March 8, 1978. The parties have agreed that there shall be joint legal custody with physical custody assigned to the defendant,46b-56a(a), Connecticut General Statutes. Reasonable visitation rights shall be awarded to the plaintiff as agreed.
The plaintiff has agreed to carry the minor child on any medical insurance coverage as available at his place of employment at his expense. The parties have agreed to share equally any uninsured medical bills incurred for treatment of their child.
During the marriage the plaintiff worked at various factory jobs, most notably for Anchor Fasteners from June, 1972 until the present time, with a hiatus due to a lay off and for hospitalizations due to alcohol dependence and for psychiatric problems due to depression or alcoholism.
Dr. Jeffrey Boyd, M.D. treated the plaintiff from January 2, 1991 until April, 1992 when the doctor terminated the relationship. The plaintiff is presently under the care of Dr. E. Savarese. Both doctors medicated him for depression severe enough that Dr. Boyd characterized it as "psychotic". If the plaintiff consumed alcohol, the symptoms became worse and, unfortunately the plaintiff was prone to the consumption of alcoholic beverages.
Prior to Dr. Boyd's course of care the plaintiff was being CT Page 4340 seen by Dr. Jeffrey Stern, the family's physician, who also prescribed anti-psychotic prescription drugs.
Illustrative of the plaintiff's behavior is his drinking bout that he attributed to an argument with his boss leading to hospitalization for five days to detox in September, 1991. Prior thereto, in 1984, the plaintiff was hospitalized three times for psychiatric episodes.
The plaintiff's formal education ended in the 9th grade. The plaintiff's current weekly wage is based on $10 hourly for 40 hours or $400. Since he receives some overtime, his gross wages listed on his financial affidavit of $447.24 gross and $351.66 net weekly were modified by the parties' stipulation during trial that plaintiff's gross wages averaged $555 gross and $426.85 net wages for the 14 weeks immediately prior to trial which commenced on December 1, 1992. The plaintiff has a vested pension which he can begin collecting upon retirement at the rate of $259.50 monthly based on its present value.
The defendant has worked in a clerical position for the State of Connecticut Income Maintenance since April, 1986 and now earns gross of $441.34 and $363.89 after mandatory deductions, i.e. $13.59 hourly for 35 hour work week. The defendant has a disability preventing her from performing repetitious hand movements, (Defendant's Exhibit #2, medical report). The defendant has been employed by the State for less than 10 years and her pension right has not yet vested, (Plaintiff's Exhibit F, page 4).
The parties purchased their first home for about $14,000 with a $700 down payment. With the proceeds of the sale of their initial home they purchased their present home for $30,900 with $27,000 being mortgage money. Several improvements were made, much of which was paid for with proceeds from a second mortgage On March 2, 1992 they refinanced their home with a new $70,000 mortgage, (Plaintiff's Exhibit D), this done after they had refinanced their 2nd mortgage in September, 1991. The proceeds from this refinance was used to pay several credit card balances, as well as the prior loan, and to pay college expense for their adult daughter and to buy a 1987 Chrysler for their use, (cf. Plaintiff's Exhibit C). Sometime prior to placing the present mortgage on the home, the plaintiff conveyed his interest in the real estate to the defendant, fearing loss of his interest to others if his drinking or depression caused a future problem, as CT Page 4341 he had one D.W.I. on his record.
The defendant's mother has lived with the defendant since three months after the parties' marriage without protest from the plaintiff.
During the marriage the defendant managed the household finances with the plaintiff giving her his paycheck. The defendant's mother contributes to the utility expenses while the parties' older child, an adult daughter, is a student working part-time to pay for the telephone, her own food and her car. The defendant was supportive of the plaintiff during the marriage. The plaintiff's assertion that the defendant was domineering would appear to be her efforts to help the plaintiff.
After considering all of the evidence in light of the statutory criteria, the court enters a judgment dissolving the marriage on the ground of irretrievable breakdown with the following orders as part of the judgment.
1. Joint legal custody is ordered for the one minor child with physical custody placed with the defendant. The plaintiff is awarded reasonable visitation rights.
2. The plaintiff shall continue to carry the minor child on any available medical insurance at his place of employment at his expense. The parties shall share equally the payment of any uninsured medical bills incurred for care of their minor child.
3. The plaintiff shall pay to the defendant as child support the sum $122 weekly as called for by the Connecticut Child Support Guidelines.
4. The plaintiff shall pay the defendant the sum of $50 per week periodic alimony until the defendant's remarriage or the death of either party.
5. The defendant shall retain the real estate known as 48 Barclare Lane, Wolcott, Connecticut as her sole property and she shall assume the mortgage, holding the plaintiff harmless therefrom.
6. The plaintiff shall retain his pension rights as his sole property. CT Page 4342
7. The plaintiff shall be solely responsible for all the liabilities listed on his financial affidavit, and he shall save the defendant harmless and indemnified.
8. The defendant shall be solely responsible for all the liabilities listed on her financial affidavit, and she shall save the plaintiff harmless and indemnified.
9. Each party will otherwise retain all assets as presently possessed as their respective sole property.
10. No allowance to defend is awarded.
Counsel for the plaintiff is directed to prepare the judgment file within the next 30 days.
HARRIGAN, J.